

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WAGGONER CARR**
**ATTORNEY GENERAL**

November 1, 1963

Honorable W. G. Woods, Jr.
County Attorney
Liberty, Texas

Opinion No. C-169

Re: Whether or not it is a
violation of the Nepotism
Law for a county hospital
to employ a person as an
office clerk when the
superintendent of said
hospital is the daughter
of said employee.

Dear Mr. Woods:

This office is in receipt of your request for an opinion concerning the following question:

"Whether or not it is a violation of the Nepotism Law for a county hospital to employ a person as an office clerk when the superintendent of said hospital is the daughter of said employee."

The following statutes are pertinent to the question asked this office:

Article 4480, Vernon's Civil Statutes, states in part as follows:

"The board of managers shall elect from among its members a president, and one or more vice-presidents and a secretary and a treasurer. It shall appoint a superintendent of the hospital who shall hold office at the pleasure of said board. Said superintendent shall not be a member of the board, and shall be a qualified practitioner of medicine, or be specially trained for work of such character." (Emphasis added)

Article 4485, Vernon's Civil Statutes, states in part as follows:

"The superintendent shall be the chief executive officer of the hospital, but shall at all times be subject to the by-laws, rules and regulations thereof, and to the powers of the board of managers. . . .

". . . He shall, with the consent of the board of managers, appoint such resident officers and such employes as he may think proper and necessary for the efficient performance of the business of the hospital, and prescribe their duties; and for cause stated in writing, he may discharge any such officer or employe at his discretion, after giving such officer or employe an opportunity to be heard." (Emphasis added)

Article 432, Vernon's Penal Code, provides:

"No officer of this State nor any officer of any district, county, city, precinct, school district, or other municipal subdivision of this State, nor any officer or member of any State district, county, city, school district or other municipal board, or judge of any court created by or under authority of any General or Special Law of this State, nor any member of the Legisllature, shall appoint, or vote for, or confirm the appointment to any office, position, clerkship, employment or duty, of any person related within the second degree by affinity or within the third degree by consanguinity to the person so appointing or so voting, or to any other member of any such board, the Legislature, or court of which such person so appointing or voting may be a member, when the salary, fees, or compensation of such appointee is to be paid for, directly or indirectly, out of or from public funds, or fees of office of any kind or character whatsoever; provided, that nothing herein contained, nor in any other nepotism law contained in any charter or ordinance of any municipal corporation of this State, shall prevent the appointment, voting for, or confirmation of any person who shall have been continuously employed in any such office, position, clerkship, employment or duty for a period of two (2) years prior to the election or appointment of the officer or member appointing, voting for, or confirming the appointment, or to the election or appointment of the officer or member related to such employee in the prohibited degree."

It is apparent from a reading of Article 432, the Nepotism Statute, that in order for said Statute to apply to a superintendent of a county hospital it must be decided whether a county superintendent is an officer as set out within said Statute.

Many definitions of "public officer" are to be found in the reported cases, but they are substantially of the same import.  In the case of Kinney v. Zimpleman, 36 Tex. 554, (1871) the definition of a public office is said to be "a right to exercise a public function or employment and take the fees and emoluments belonging to it."  In Johnson v. Smith, 112 Tex. 222, 246 S.W. 1013 (1922), public office was defined as "a public station or employment conferred by the appointment of government."  In Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900), the Court defined a public office as "the right, authority and duty created and conferred by law by it, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public."  In Bonner v. Belsterling, 138 S.W. 571 (Tex.Civ.App. 1911) it was held that "a public office is something different from a public contract and that officers hold their positions by election or appointment and not by contract."

In the case of Knox v. Johnson, 141 S.W.2d 698 (Tex. Civ.App. 1940, error ref.) the court held that a superintendent of a state hospital was a "public officer" of the State of Texas within the meaning of Section 7 of Article XV of the Constitution of Texas.

From a reading of Article 4480, Vernon's Civil Statutes, the Board of Managers appoints a superintendent of the hospital who holds this office at the pleasure of the Board.  In Article 4485, Vernon's Civil Statutes, the superintendent is made the chief executive officer of the hospital but is subject to the powers of the Board of Managers. This Article gives the superintendent the power to appoint such resident officers and employees and prescribe their duties with the consent of the Board.  He may discharge such officers and employees without consent of the Board.  Article 4485 of Vernon's Civil Statutes requires the superintendent to file a bond for the faithful performance of his duties.

This office can find no direct authority holding a superintendent of a county hospital to be a "public officer" within the nepotism statute.  It is the opinion of this office that as a practical matter since the superintendent is the

chief executive officer and does all the hiring and firing of the hospital employees, he should be subject to the nepotism statute.

Therefore, it is the opinion of this office that a superintendent of a county hospital is a public officer within the meaning of the Nepotism Statute and cannot appoint, vote for, or confirm the appointment to any office, position, clerkship, employment or duty of any person related to him within the second degree by affinity or within the third degree by consanguinity, unless such person has been continuously employed in such office, position, clerkship, employment or duty for a period of two years prior to the appointment of the superintendent.

## S U M M A R Y

The superintendent of a county hospital is an officer as defined in Article 432, Vernon's Penal Code, the Nepotism Statute, and is thereby subject to said Statute.

Very truly yours,

WAGGONER CARR
Attorney General

By  *Bill Morse Jr.*

Bill Morse, Jr.
Assistant

BMjr:sj:zt

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman

Howard Fender
Pat Bailey
J. C. Davis

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone